# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: N.C.

No. 16-1140 (Kanawha County 16-JA-235)

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.C., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's November 15, 2016, order terminating her parental rights to fifteen-year-old N.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2016, the DHHR received a referral that petitioner hit N.C. in the face with her purse while intoxicated. N.C. told investigators that he found needles and loose pills in a drawer inside petitioner's residence. Investigators also discovered that petitioner's residence did not have electricity or running water. During the investigation, petitioner admitted that she had a history of substance abuse. Based upon this investigation, the DHHR filed a petition for abuse and neglect based on the above and the allegation that petitioner failed to supply N.C. with appropriate food or obtain proper medical care.

Thereafter, the DHHR provided petitioner with services aimed at remedying the conditions of abuse and neglect. These services included, random drug screens, supervised visitation, and parenting and adult life skills classes. Petitioner also participated in a psychological evaluation during which she admitted to intravenous drug use.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

In June of 2016, the circuit court held an adjudicatory hearing during which the circuit court heard testimony from petitioner and a Child Protective Services ("CPS") worker. According to the CPS worker, petitioner's residence did not have electricity. Furthermore, the worker testified that petitioner admitted that she used methamphetamine and hit N.C. in the face with her purse. Petitioner provided corroborating testimony that she used intravenous methamphetamine while N.C. was in the home, that she hit N.C. in the face, and that her home did not have electricity or running water. After considering the testimony, the circuit court adjudicated petitioner as an abusing parent by order entered on August 23, 2016.

Two months later, the circuit court held a dispositional hearing during which it heard testimony from several witnesses. Petitioner's parental education specialist testified that petitioner missed multiple appointments. Furthermore, the specialist testified that petitioner unequivocally refused parenting and adult life skills classes as part of her treatment plan. Aliana Swain, a supervised psychologist, testified that petitioner blamed others for her situation and saw little need to change her behavior. Finally, the circuit court was presented with evidence that petitioner failed approximately nine drug tests during the underlying proceedings. After considering the parties arguments, the circuit court terminated petitioner's parental rights by order entered on November 15, 2016.[2] This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period. We disagree. Pursuant to West Virginia Code § 49-4-610(3)(A), a circuit court may grant a parent a post-adjudicatory improvement period when "[t]he [parent] moves *in writing* for the improvement period [and] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." (Emphasis added). On appeal, petitioner cites to no written motion for an improvement period, and the record on appeal

---

[2]The child's father is deceased. According to the guardian, as of the filing of her response brief, the permanency plan for the child is adoption by a family member.

is devoid of any such written motion. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is clear from the record that petitioner failed to demonstrate her ability to fully participate in an improvement period. The circuit court was presented with evidence that petitioner failed approximately nine drug tests during the underlying proceedings and unequivocally refused to participate in parenting and adult life skills classes. Petitioner also blamed others for her situation and did not see a need to change her behavior. "Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.,* 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.,* 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, it is clear that petitioner failed to establish that she was likely to fully participate in a post-adjudicatory improvement period.

Similarly, West Virginia Code § 49-4-604(a)(6) provides that circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As previously mentioned, petitioner failed nine drug screens and unequivocally refused to participate in parenting and adult life skills classes to help remedy the conditions of abuse and neglect. Given these facts, we find no error in the circuit court's ruling that there was "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." As such, we find no error in the circuit court's termination of petitioner's parental rights.

This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated, "[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, syl. pt. 6 (2011). Moreover, this Court has stated that

> "[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found."

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we hereby affirm the circuit court's November 15, 2016, order.

Affirmed.

**ISSUED**: April 10, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker